NEBRASKA LOAN & TRUST COMPANY, APPELLANT, V. LINCOLN & BLACK HILLS RAILROAD COMPANY, APPELLEE.

FILED DECEMBER 22, 1897.    No. 7958.

Eminent Domain: REVIEW OF PROCEEDINGS: ERROR AND APPEAL. The method of bringing to this court for review judgments of the district court in proceedings by railroads for the exercise of the right of eminent domain is by petition in error and not by appeal.

APPEAL from the district court of Howard county. Heard below before KENDALL, J.    Appeal dismissed.

J. B. Cessna, W. H. Thompson, John A. Casto, and George F. Work, for appellant.

O. A. Abbott, J. W. Deweese, and F. E. Bishop, contra.

IRVINE, C.

The Lincoln & Black Hills Railroad Company instituted proceedings in Howard county for the appropriation of land of the Nebraska Loan & Trust Company. From the report of the appraisers an appeal was taken

to the district court.    Within six months after the rendition of judgment in the district court a transcript of the proceedings was lodged in this court, but more than a year has elapsed and no petition in error has been filed or summons in error issued.    It is plain that the case is here, if at all, by appeal and not on error.    The railroad company now interposes objections to the jurisdiction, presenting the question whether an appeal lies from the district court to this court in such cases.

For many years it has been generally assumed that cases of this character, being legal rather than equitable in their nature, should be brought here on error and not by appeal.    At the same time there is no constitutional inhibition against providing for an appeal in such cases, and the Nebraska Loan & Trust Company contends that the legislature has provided such a remedy.    The question is one of technical rather than substantial importance, in view of the equal advantages now afforded by the two methods of review.    The statute, after providing how condemnation proceedings by railroad companies shall be instituted, appraisers appointed, damages ascertained and reported to the county judge, and for an appeal from the report of the appraisers to the district court, further provides that "either party may appeal from the decision of the district court to the supreme court of the state, and the money so deposited shall remain in the hands of the county judge until a final decision be had, subject to the order of the supreme court." (Compiled Statutes, ch. 16, sec. 97.)    This section was adopted as a portion of the first statute regulating railroads, approved February 8, 1864.    (Session Laws, p. 130.)    It has remained in this respect unchanged, except by the substitution of "state" for "territory" and "county judge" for "probate judge."    It is by virtue of the use of the word "appeal" in this section that appellant here claims the right.

It has frequently been remarked that the word "appeal" is used in many different senses, owing to the di-

versity of statutes regulating appellate procedure.  In at
least four senses has it been used in this state with refer-
ence to proceedings in the supreme court alone.   In one
sense, and a very frequent one, it denotes all kinds of
proceedings for the review of cases,—all proceedings
commonly known as appellate.  (*Vide* 2 Am. & Eng. Ency.
Law 425, and all the English dictionaries.)  In its special
and technical sense it designates the particular form of
review, dependent upon statute for its existence (*Wilcox
v. Saunders*, 4 Neb. 569; *State v. Ensign*, 11 Neb. 529;
*State v. Bethea*, 43 Neb. 451), whereby a case is trans-
ferred, after decision, to a higher court for a re-examina-
tion of the whole proceeding, and final judgment or de-
cree in accordance with the result of such re-examination.
(*State v. Doane*, 35 Neb. 707; *Western Cornice Mfg. Co. v.
Leavenworth*, 52 Neb. 418.)  In the latter sense, as applied
to proceedings in this court, it can now only refer to the
technical appeal provided for by the present "Title 21"
of the Code of Civil Procedure.  Unless in the statute
under consideration it was used in this sense, this case
is not properly before us.   To determine the question an
examination of the history of the various laws on the
subject is necessary.

The first territorial legislature, as its first act, adopted
portions of the statutes then in force in Iowa.   Among
these provisions, appearing as section 552, was the fol-
lowing: "From the decision of the district court an ap-
peal lies to the supreme court."   Immediately following,
but under a separate caption, were a number of sections
providing the manner, time, and effect of taking such
appeal, very different from the law now in force.   This
was the only method of review except by *certiorari* then
provided, and the only one known in civil cases until
1858.   This was not our present technical appeal,
whereby equity cases are reviewed, but a general and
exclusive method of review.   In 1858 a Code of Civil
Procedure was adopted which, with amendments by sub-
sequent legislatures, forms our present code of practice.

Title 16 of that Code provided for proceedings in error, and evidently contemplated making that the sole method of review by the supreme court.    A number of the former provisions were then expressly repealed and there was also a general repealing clause, against which there was then no inhibition.    Throughout the history of the territory the distinction between law and equity was observed in regard to procedure, and February 15, 1864, there was approved an act to regulate the practice in chancery. Section 45 of that act provided for the appeal of chancery cases, and the following sections regulated the time, manner, and effect of such appeals.    These provisions were carried into the Revised Statutes of 1866 as Title 24 of the Code.    They were repealed in 1867 (Session Laws, p. 71) by the act whereby the distinctions were abolished between actions at law and suits in equity. Thus we see that the general appeal provided for in 1855 had been superseded in 1858 by the creation of proceedings in error, and while the sections following the caption line and providing not for the right but the method of appealing seem not to have been expressly repealed, the Code of 1858 rendered them obsolete.    (*Irwin v. Calhoun*, 3 Neb. 453.)  No such thing as an appeal was thereafter known to our law until February 15, 1864, when a new kind of appeal was created for chancery cases alone. The repeal of this law, in 1867, entirely abolished appeals to the supreme court.    (*Irwin v. Calhoun, supra.*)    There again followed a period wherein appeals did not exist, until March 3, 1873, when the present law was passed, providing for appeals in equity cases, and which has been inserted into the Code as Title 21, in place of the long obsolete sections regulating the manner of proceeding in the early form of appeals, adopted from Iowa. *Wilcox v. Saunders*, 4 Neb. 569.)  In the two cases last cited will be found interesting reviews of the legislation we have been considering, by judges who were for the most part personally cognizant of its history.

The section which it is claimed gives the right of ap-

peal in this case was, it will be observed, enacted at a time when for six years no appeals to the supreme court had been known to the law, and a week before the same legislature created anew the right to appeal, and confined it to chancery cases. It follows then that the word "appeal" in the proviso quoted could not have referred to the present technical appeal, which was not created until nine years thereafter, and then confined to equity cases; nor to the early appeal provided for in 1855, for that method had been for six years superseded; nor again did it anticipate and contemplate the appeal provided for one week later, else that appeal would not, by the terms of the statute, have been restricted to chancery cases. A retrospective glance will show that appellate procedure was still in a formative state and had not in the minds of the legislature yet assumed a fixed character. The word used could not have referred to any special method of review then known, and must have been used in its broad sense for the purpose of conferring generally the right to a review by the supreme court, leaving the practice and method of review to be determined by the legislation in force at the time of any particular proceeding. So interpreted we have no hesitation in saying that under present statutes the method must be by petition in error. The action is essentially legal and is not within the cases which the act of 1873 permits to be brought here by appeal.

It is contended that a technical appeal must have been contemplated by the final clause of the statute, whereby the condemnation money is to be held by the county judge "until a final decision be had, subject to the order of the supreme court." This can mean no more than that the money is to be held subject to the final decision as ordered by the supreme court; but if it be true as claimed that it contemplates the entry of a final judgment by the supreme court, this is insignificant, because section 594 of the Code, inasmuch as error was to be made the only method of review, expressly provided that

in error cases the supreme court may itself enter the judgment the district court should have entered.

APPEAL DISMISSED.

RAGAN, C., not sitting.